293 So.2d 663 (1974)
LOUISIANA HOSPITAL SERVICE, INC., Plaintiffs-Appellants,
v.
COLLECTOR OF REVENUE, Defendant-Appellee.
No. 9800.
Court of Appeal of Louisiana, First Circuit.
April 22, 1974.
*664 John S. White, Jr., Baton Rouge, and Albert B. Koorie, New Orleans, for plaintiffs-appellants.
Golden Mills, Baton Rouge, for defendant-appellee.
Before SARTAIN, BAILES and VERON, JJ.
SARTAIN, Judge.
At issue here are certain provisions of LSA-R.S. 9:151 et seq., collectively identified as the Uniform Disposition of Unclaimed Property statute, recently enacted by the legislature as Act No. 146 of 1972.
The plaintiffs, Louisiana Hospital Service, Incorporated and Hospital Service Association of New Orleans, are two domestic corporations which offer group and non-group hospital-surgical-medical contracts to the general public, commonly called "Blue Cross" plans. In the course of the operation of this business, benefits are occasionally owed for which the plaintiffs issue and mail checks to the policy holders but which are never cashed. To be decided is whether these funds are subject to the Unclaimed Property statute. The question appears to be res nova.
Act No. 146 of 1972 makes statutory, with minor changes, the uniform act concerning the disposition of unclaimed property drafted by the National Conference of Commissioners on Uniform State Laws. It may be generally summarized as an effort to protect the rights of unknown owners of property or funds by locating them, informing them of their rights of ownership, and restoring their property to them while giving the state, rather than the individual holders of unclaimed property, the benefit of the use of such property, most of which, experience shows, will never be claimed. By application of this act, companies and individuals are deprived of a windfall, and the state gets full use of the property. Douglas Aircraft Co. v. Cranston, 58 Cal. 2d 462, 24 Cal.Rptr. 851, 374 P.2d 819 (1962).
R.S. 9:151-9:160 define property presumed abandoned which is in the possession of various types of businesses and, in the statutes following thereafter, provisions are made for the reporting to the Collector of Revenue as to the property held by the various businesses (R.S. 9:162), the publication of notice to the listed owners thereof (R.S. 9:163) the delivery thereafter to the Collector if the property remains unclaimed for a designated time (R.S. 9:164), and the means by which the property may thereafter become the responsibility of the Collector, with eventual transfer to the State Treasury (R.S. 9:165 et seq.). Penalty provisions are also incorporated to the Act, among other administrative provisions.
In the case at bar, practically all of the facts have been stipulated by counsel. They agreed that paragraphs 4 through 9, *665 11 and 12 of plaintiffs' petition are true, those paragraphs containing the following allegations:

"4.
Petitioners are engaged in the business of issuing hospital-surgical-medical contracts on both group and non-group bases, and are commonly referred to as `Blue Cross Plans'.
5.
Petitioners are corporations organized and functioning entirely upon a nonprofit, mutual plan; they issue no shares of stock and pay no cash dividends; ownership of the corporations is vested in their members, who are subscribers during the period that their certificates or policies are in full force and effect; their `subscribers' are the persons named on the face of the certificates or policies issued by petitioners, and who have signed the applications for same; cancellation, expiration, or other termination of certificates or policies issued by petitioners terminates membership and all rights of the subscribers and their dependents previously covered by such certificates or policies.
6.
In the ordinary course of their business, petitioners receive proofs of claim which are analyzed to determine whether or not benefits are payable under the appropriate contracts, certificates or policies issued by them, and, if so, to what extent.
7.
The contracts, certificates, or policies issued by petitioners differ in their content; benefits are payable sometimes directly to providers of services for subscribers (hospitals and physicians) and sometimes to the subscribers themselves.
8.
Benefit checks payable to providers of services are generally cashed promptly, but some checks payable to subscribers are sometimes not cashed and remain outstanding for extended periods of time.
9.
Therefore, from time to time petitioners acknowledge that benefits are payable to their subscribers under contracts, certificates or policies issued by petitioners; petitioners issue checks for such benefits payable to their subscribers, but the checks are not cashed and the benefits remain unclaimed; such funds or property are hereinafter referred to as `unclaimed Blue Cross benefits'.
11.
Petitioners allege that, through their attorneys, they have written the defendant Collector of Revenue, requesting his interpretation of this statute as not being applicable to the aforesaid facts; attached hereto and made a part hereof are copies of letters dated December 28, 1972 by John S. White, Jr. and January 5, 1973 by Albert B. Koorie.
12.
Defendant Collector of Revenue, through the legal division of the Department of Revenue, has responded to the foregoing letters, disagreeing with the interpretation of this statute made by petitioners; attached hereto and made a part hereof is a copy of a letter dated February 7, 1973 by Willie D. Maynor, attorney for the Department of Revenue."
Based upon these facts, petitioners seek declaratory judgment to the effect that they are not subject to the Unclaimed Property Act. The trial court, in detailed and well reasoned written reasons for judgment, sustained the contentions of the *666 Collector of Revenue and concluded that the plaintiffs were "business associations" as defined by R.S. 9-152(2) and that the unclaimed Blue Cross benefits fell into the category of "or other sum held or owing by a business association for or to a shareholder" as intended by R.S. 9:156, and were thus presumed abandoned after five years of the date prescribed for payment or delivery. We affirm that judgment on different grounds and with certain modifications.
As specifically expressed in R.S. 9:151, uniformity of state laws on the subject has been deemed desirable by the legislature of the state. To that end, the uniform act as drafted by the National Conference of Commissioners, and upon which our law is modeled, and the Commissioner's commentaries upon the various articles therein, should be persuasive here.
Section 9 of the uniform act contains these provisions:
§ 9 [Miscellaneous Personal Property Held for Another Person]. All intangible personal property, not otherwise covered by this Act, including any income or increment thereon and deducting any lawful charges, that is held or owing in this state in the ordinary course of the holder's business and has remained unclaimed by the owner for more than 7 years after it became payable or distributable is presumed abandoned.
R.S. 9:160 provides as follows:
§ 160. Property presumed abandoned; that held in ordinary course of business
All funds and intangible personal property, not otherwise covered by this chapter, including any income or increment thereon and deducting any lawful charges, that is held or owing in this state in the ordinary course of the holder's business and has remained unclaimed by the owner for more than ten years after it became payable or distributable is presumed abandoned. Acts 1972, No. 146, § 1.
Therefore, it is obvious that the legislature enacted Section 9 of the uniform act as R.S. 9:160 with only slight variation, they broadening the initial phrase of the paragraph by the addition of the term "funds" and by further lengthening the time period for the presumption of abandonment from seven to ten years. Otherwise, Section 9 of the uniform act was adopted verbatim.
The Commissioner's Note to Section 9 of the uniform act contains this commentary:
Section 9 is the omnibus section covering all other intangible personal property not otherwise covered by the more specific provisions of the Act. It should be noted that to be subject to the section the property must be held or owing in the "ordinary course of the holder's business in this state." A wide variety of items will be embraced under this section, including, by way of illustration, money, stocks, bonds, certificates of membership in corporations, securities, bills of exchange, deposits, interest, dividends, income, amounts due and payable under the terms of insurance policies not covered by section 4, pension trust agreements, profit-sharing plans, credit balances on paid wages, security deposits, refunds, funds deposited to redeem stocks, bonds, coupons and other securities, or to make a distribution thereof, together with any interest or increment thereon. If desired, these specific items could readily be written into section 9 itself, thus perhaps adding to clarity and ready understanding of the coverage of the section, although necessarily at the expense of brevity. (emphasis added).
The obvious intent of Section 9, explained by the commentary, was to create an omnibus provision which was to include, among other things, provisions for the disposition of proceeds due under policies of insurance other than life insurance *667 policies, with which Section 4 of the uniform act (our R.S. 9:154) deals exclusively. Therefore, the proceeds of hospital-surgical-medical contracts of insurance unclaimed from petitioners for the time period prescribed in R.S. 9:160 must be reported in the manner called for by the appropriate section of the act.
We are aware that the plaintiff corporations are designed to offer hospital-surgical-medical insurance coverage at the lowest possible cost to its members, that they operate on a non-profit basis, and that to allow them to retain unclaimed funds would have the desirable effect of benefiting all of their membership with lower cost for their coverage. We are persuaded, however, that the present law contains no exemption for the plaintiffs as now written and the judgment of the district court is affirmed, as modified herein, at appellants' costs.
Affirmed.